UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL BRUNER,

              Plaintiff,

v.

NANCY FOSTER, in her individual
capacity; and THE CITY OF DETROIT,
a municipal corporation,

              Defendants.

Case No. 22-cv-10391
Hon. Jonathan J.C. Grey
Mag. Judge Elizabeth A. Stafford

---

**MUELLER LAW FIRM**
By:    Wolfgang Mueller (P43728)
         John Wm. Martin, Jr. (P42266)
*Attorneys for Plaintiff*
41850 W. 11 Mile Road, Ste 101
Novi, MI 48375
P: (248) 489-9653
F: (248) 347-6630
E: wolf@wolfmuellerlaw.com
john@wolfmuellerlaw.com

**SEWARD HENDERSON PLLC**
By:    T. Joseph Seward (P35095)
         Kali M. L. Henderson (P76479)
*Attorneys for Defendants*
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
E:  jseward@sewardhenderson.com
khenderson@sewardhenderson.com

## DEFENDANTS' MOTION TO ADDRESS DISCOVERY ABUSES

Defendants, **NANCY FOSTER** and **THE CITY OF DETROIT,** by and through the

undersigned counsel, submit the following as their Motion to Address Discovery

Abuses. In support of said motion, Defendants rely upon the attached brief.

Consistent with Local Rule 7.1(a), defense counsel sought concurrence in this

motion by first sending a copy of the motion to Plaintiff's counsels on Wednesday,

November 1, 2023, via email, explaining the basis for the motion, requesting

concurrence, and indicating that the parties could discuss further after having the opportunity to review the motion. Two telephone conferences were had between the parties, and the parties were unable to reach any agreement. Despite representations that certain supplements or certifications for the information complained of in the motion could be made, defense counsel has received none and thus, this motion is being filed as proposed. Therefore, Defendants state:

> There was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   November 10, 2023        E: khenderson@sewardhenderson.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL BRUNER,

        Plaintiff,

v.

NANCY FOSTER, in her individual
capacity; and THE CITY OF DETROIT,
a municipal corporation,

        Defendants.

Case No. 22-cv-10391
Hon. Jonathan J.C. Grey
Mag. Judge Elizabeth A. Stafford

---

| MUELLER LAW FIRM | SEWARD HENDERSON PLLC |
|---|---|
| By:   Wolfgang Mueller (P43728)<br>       John Wm. Martin, Jr. (P42266)<br>*Attorneys for Plaintiff*<br>41850 W. 11 Mile Road, Ste 101<br>Novi, MI 48375<br>P: (248) 489-9653<br>F: (248) 347-6630<br>E: wolf@wolfmuellerlaw.com<br>john@wolfmuellerlaw.com | By:   T. Joseph Seward (P35095)<br>       Kali M. L. Henderson (P76479)<br>*Attorneys for Defendants*<br>Royal Oak, MI 48067<br>P: (248) 733-3580<br>F: (248) 733-3633<br>E:  jseward@sewardhenderson.com<br>khenderson@sewardhenderson.com |

---

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO ADDRESS DISCOVERY ABUSES

# TABLE OF CONTENTS

Statement of the Issues ............................................................................. iv

    I.    Whether there are Sufficient Grounds to Dismiss this Matter Where Plaintiff has Obstructed Discovery Multiple Times in Written and Testimonial Discovery? iv

    II.   Whether Plaintiff should be sanctioned for Failing to Admit that his Dodge Charger at the Heart of this Controversy is Grey in the Face of All Evidence, including Photographs and the Manufacturer's Build Sheet, to the Contrary? .... iv

    III.   Whether Plaintiff should be sanctioned for Providing False Information and Omitting Known, Relevant Information from his Answers to Interrogatories? .. iv

    IV.   Whether Plaintiff should be sanctioned and/or Compelled to Produce Duces Tecum Material? ......................................................................... iv

    V.   Whether Plaintiff's Counsel Should be Sanctioned for Coaching Witnesses Through Improper Objections and Interjections? ................................................. iv

    VI.   Whether Plaintiff should be sanctioned for Failing to Provide Proper Initial Disclosures? ........................................................................................ v

Index of Authorities ................................................................................. vi

Most Controlling Authority ....................................................................... ix

Introduction ............................................................................................... 1

Background: Underlying Criminal Case .................................................... 1

Plaintiff's Discovery Violations ................................................................. 3

    I.    Plaintiff and his counsel should be sanctioned for fraudulently and frivolously denying the color of Plaintiff's vehicle ................................................. 3

        A.    Applicable Law regarding the Admission Response ................................. 4

        B.    Plaintiff's Refusal to Admit the Charger is Gray is Sanctionable ............ 6

    II.   Plaintiff should also be sanctioned for providing incorrect information in his interrogatory answers ................................................................................ 10

        A.    Law - Inaccurate Answers to Interrogatories ........................................ 10

        B.    Application - Plaintiff's interrogatory responses were false, intentionally deceptive, and omitted key information that was available to Plaintiff if a proper inquiry had been conducted. .................................................................. 13

    III.   The Failure to Produce Responsive Duces Tecum Materials is Part of a Pattern of Deliberate Non-Compliance .............................................................. 20

A.    Law - Notice of Deposition and Subpoena ...............................................20

B.    Application – The Failure to Provide Duces Tecum Materials Properly is Another Example of Obstructive and Reckless Discovery Misconduct...........22

IV.    Plaintiff's counsel should be sanctioned for inappropriate conduct at deposition that is demonstrative of an intent to frustrate discovery....................24

A.    Law - Objections during Deposition .........................................................24

B.    Application - Plaintiff's counsel should be sanctioned for inappropriate objections and instructing witnesses not to answer questions. .........................25

V.    Plaintiff should be compelled to provide complete initial disclosures including a full computation of damages. ...........................................................30

A.    Law – Initial Disclosures ..........................................................................30

B.    Facts and Application – Plaintiff has refused to provide complete initial disclosures. ..........................................................................................................30

VI.    Plaintiff should be ordered to pay costs associated with the present motion 32

Conclusion ............................................................................................................32

## STATEMENT OF THE ISSUES

**I.   WHETHER THERE ARE SUFFICIENT GROUNDS TO DISMISS THIS MATTER WHERE PLAINTIFF HAS OBSTRUCTED DISCOVERY MULTIPLE TIMES IN WRITTEN AND TESTIMONIAL DISCOVERY?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

**II.   WHETHER PLAINTIFF SHOULD BE SANCTIONED FOR FAILING TO ADMIT THAT HIS DODGE CHARGER AT THE HEART OF THIS CONTROVERSY IS GREY IN THE FACE OF ALL EVIDENCE, INCLUDING PHOTOGRAPHS AND THE MANUFACTURER'S BUILD SHEET, TO THE CONTRARY?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

**III.   WHETHER PLAINTIFF SHOULD BE SANCTIONED FOR PROVIDING FALSE INFORMATION AND OMITTING KNOWN, RELEVANT INFORMATION FROM HIS ANSWERS TO INTERROGATORIES?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

**IV.   WHETHER PLAINTIFF SHOULD BE SANCTIONED AND/OR COMPELLED TO PRODUCE DUCES TECUM MATERIAL?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

**V.   WHETHER PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR COACHING WITNESSES THROUGH IMPROPER OBJECTIONS AND INTERJECTIONS?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

**VI.   WHETHER PLAINTIFF SHOULD BE SANCTIONED FOR FAILING TO PROVIDE PROPER INITIAL DISCLOSURES?**

Defendants answer, "*Yes.*"

Plaintiff answers, "*No.*"

# INDEX OF AUTHORITIES

## Cases

*Ayers v. City of Cleveland*,
   773 F.3d 161 (6th Cir. 2014) ...................................................................18

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)....................................................................................6

*Da-Silva v. Smith's Food & Drug Centers, Inc.*,
   No. 2:12-CV-00595-GMN, 2013 WL 2558302 (D. Nev. June 8, 2013) ..............6

*Dotson v. Bravo*,
   202 F.R.D. 559 (N.D. Ill. 2001), *aff'd,* 321 F.3d 663 (7th Cir. 2003)......................13

*Electrical Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*,
   340 F.3d 373 (6th Cir. 2003)...................................................................21

*Hino Motors Mfg. USA, Inc. v. Hetman*,
   No. CV 20-10031, 2021 WL 6285280 (E.D. Mich. Dec. 14, 2021) ....................6

*J & J Sports Productions, Inc. v. Mannecorp, Inc.*,
   No. 14-cv-11694, 2016 WL 1594377 (E.D. Mich. Apr. 21, 2016)......................32

*Jones v. Cont'l Corp.*,
   789 F.2d 1225 (6th Cir. 1986) ...................................................................5

*Khami v. Ortho-McNeil-Janssen Pharm, Inc.*,
   No. 09-CV-11464, 2011 W.L. 996781 (E.D. Mich., March 17, 2011)..................4

*Legault v. Zambarano*,
   105 F.3d 24 (1st Cir. 1997)......................................................... 11, 12

*McCarty v. Ameritech Pub., Inc.*,
   763 F.3d 488 (6th Cir. 2014) ....................................................................4

*McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730 (6th Cir. 2002) ............................10

*Moss v. Fairborn City Sch.*,
   No. 3:08CV00393, 2010 WL 11538379 (S.D. Ohio Mar. 5, 2010)....................30

*Ndoye v. Major Performance LLC*,
   No. 1:15-CV-380, 2017 WL 822110 (S.D. Ohio Mar. 1, 2017) ...........................6

*Olga's Kitchen of Hayward, Inc. v. Papo*,
   108 F.R.D. 695 (E.D. Mich. 1985) ....................................................................10

*Olga's Kitchen v. Papo*,
   815 F.2d 79 (6th Cir. 1987) ..............................................................................10

*Perkins v. Gen. Motors Corp.*,
   129 F.R.D. 655 (W.D. Mo. 1990), aff'd, 965 F.2d 597 (8th Cir. 1992) ..............12

*Pope v. Fed. Exp. Corp.*,
   138 F.R.D. 675 (W.D. Mo. 1990), *aff'd in part, vacated in part on other
   grounds*, 974 F.2d 982 (8th Cir. 1992) .............................................................11

*Red Carpet Studios Div. of Source Advantage, Ltd. V. Sater*,
   465 F.3d 642 (6th Cir. 2006) ..............................................................................5

*Richardson v. Rock City Mech. Co., LLC*, No. CV 3-09-0092, 2010 WL 711830
   (M.D. Tenn. Feb. 24, 2010) ...............................................................................30

*Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*,
   88 F.3d 368 (6th Cir. 1996) ................................................................................6

*Sharper v. Wal-Mart Stores, Inc.*,
   No. 17-12980, 2018 WL 2016156 (E.D. Mich. May 1, 2018) ............................32

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v.
   Rogers*,
   357 U.S. 197 (1958).............................................................................................12

*TWM Manufacturing Company, Inc v Dura Corp.*,
   722 F.2d 1261 (6th Cir. 1983)...........................................................................21

*USA, Inc. v. Boyer Consulting, LLC*,
   No. 20-10031, 2022 WL 54540 (E.D. Mich. Jan. 5, 2022) ...................................6

**Statutes**

28 U.S.C. § 1927 ....................................................................................................5, 9

## Rules

Fed. R. Civ. P. 26 (c)(1) ...................................................................................31

Fed. R. Civ. P. 26(a)(1)(A) ..............................................................................30

Fed. R. Civ. P. 26(a)(1)(A)(iii) ........................................................................30

Fed. R. Civ. P. 26(e)(1) ...................................................................................12

Fed. R. Civ. P. 26(g)(1) ............................................................................ 4, 5, 9

Fed. R. Civ. P. 26(g)(1)(B) ..............................................................................10

Fed. R. Civ. P. 26(g)(3) ...............................................................................5, 11

Fed. R. Civ. P. 30(b)(2) ...................................................................................20

Fed. R. Civ. P. 30(c)(2) ............................................................................. 24, 25

Fed. R. Civ. P. 36 ..............................................................................................4

Fed. R. Civ. P. 37(a)(1) ...................................................................................22

Fed. R. Civ. P. 37(a)(5)(A) ..............................................................................32

Fed. R. Civ. P. 37(b)(2)(A) ..............................................................................12

Fed. R. Civ. P. 37(b)(2)(A)(v) .........................................................................12

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................13

Fed. R. Civ. P. 37(c)(2) .......................................................................... 4, 9, 10

Fed. R. Civ. P. 45 (g) .......................................................................................21

Fed. R. Civ. P. 45(a)(2) ...................................................................................21

Fed. R. Evid. 613(a) .........................................................................................27

## MOST CONTROLLING AUTHORITY

Federal Rules of Civil Procedure  26, 30, 36, and 37

The Court holds the inherent authority to dismiss an action upon a finding of bad faith, willfulness, or fault. *Brady v. United States*, 877 F. Supp. 444, 452 (C.D. Ill. 1994) (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976). An intentional or reckless disregard of a party's obligation is sufficient to constitute bad faith. *Id*.

# INTRODUCTION

This motion addresses a pattern of serious discovery abuses committed throughout the course of this case that crystallized just prior to the expiration of the discovery period between the deposition of Plaintiff and the subsequent Request to Admit. This motion walks the Court through the conduct, starting with the most egregious. Defendants request that the Court address this conduct and put a stop to it by dismissing this case. If this Court does not see fit to dismiss the case at this stage, then other sanctions are necessary.

# BACKGROUND: UNDERLYING CRIMINAL CASE

In 2012, security guard Marcel Jackson was murdered outside of Club Pandemonium in Detroit. Evidence pointed to Plaintiff Carl Bruner and Michael Lawson as the culprits. Detroit Police Officers obtained statements from the other security guards stating that: (1) Bruner was thrown out of the club after assaulting a female guest in the DJ booth; (2) Bruner came back to the Club, acting belligerent and looking for his cellphone, but refused to be patted-down to re-enter; (3) Bruner stood across the street staring at the Club until closing; (4) they saw a gray Dodge Charger circling the Club just before the shooting, some recognized Bruner and Lawson in the Charger. (Exhibit 1, Guard Statements).

Detroit Police Detective Nancy Foster was then assigned to the case. She traced a cell phone, found by a security guard in the DJ booth the night of the

shooting, back to Bruner and his then-girlfriend Terri Lopez. (Exhibit 1, Guard Statements). Two weeks later, Det. Foster took Lopez's statement that says: (1) Lopez and Bruner were friends; (2) Lopez and Bruner co-owned a dark silver Dodge Charger;[1] (3) Bruner ignored her calls about the unpaid loan on the Charger; (4) Lopez had not heard from Bruner in a couple of weeks; (5) Bruner always had the car; (6) Bruner was supposed to come see her but instead went to a friend's party; (7) Bruner called her once from an unknown number since the party.[2] (Exhibit 2, Lopez Statement)

The investigation later stalled until 2014, when Wesley Webb, facing charges of his own, approached the prosecution to share details about the shooting. During the underlying prosecution of Bruner/Lawson, Webb only testified at Lawson's individual preliminary examination, and a transcript of his testimony was read into the record at the joint trial. In a written statement, he said that: (1) he and Lucky, a.k.a. Lawson, were sitting in a car the next day when Lawson detailed what occurred at Club Pandemonium, implicating himself and Box (Bruner) in the shooting; (2) Lawson said that after Bruner was "put out" of the club, Bruner left and came back with a gun; (3) Lawson said that he let Bruner out of the car, drove and parked in

---

[1] Lopez now claims that her statement was changed from "green" to "silver."

[2] This is not a complete summary of the investigation and evidence that was far more extensive. Only the portions relevant to this motion are discussed at this time.

front of Sweetwater Tavern, then shots rang out; (4) Lawson said he drove around a corner, picked up Bruner and a girl, then drove off in Bruner's "gray charger." (Exhibit 3, Webb Statement)

Bruner and Lawson were arrested and convicted in 2014. On appeal, Bruner challenged his inability to confront Webb, who had only appeared for Lawson's preliminary examination; Bruner was granted a retrial. *People v. Bruner*, 504 Mich. 881, 928 N.W.2d 220 (2019). At the retrial, he was found not guilty and released in 2020. Bruner then filed this suit regarding the investigation and prosecution.

## Plaintiff's Discovery Violations

### I.   Plaintiff and his counsel should be sanctioned for fraudulently and frivolously denying the color of Plaintiff's vehicle.

The most egregious discovery conduct occurred when Plaintiff denied that the Dodge Charger pictured below is gray in response to a Request for Admission.



*Exhibit 4, Charger Photographs (cropped)*

### A.   Applicable Law regarding the Admission Response

Five provisions of Federal law, from varying sources, govern this request and response: **Federal Rules of Civil Procedure 36, 37(c), Rule 26(g), 28 U.S.C. § 1927**, and **the Court's inherent authority**. Each is discussed below.

*1. Rule 36* - Rule 36 allows a party to serve a request that another party admit the truth of specific facts. Fed. R. Civ. P. 36. "Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtlessly be able to prove." *Khami v. Ortho-McNeil-Janssen Pharm, Inc.*, No. 09-CV-11464, 2011 W.L. 996781, at *2 (E.D. Mich., March 17, 2011) (Exhibit 5, *Khami*).

*2. Rule 37(c)* - When a request for admission is denied, but later proved true, the requestor can file a motion requesting that the denying-party pay the reasonable costs incurred in making that proof. Fed. R. Civ. P. 37(c)(2). This rule "directs (and does not just permit) the court to award monetary sanctions…" *McCarty v. Ameritech Pub., Inc.*, 763 F.3d 488 (6th Cir. 2014).

*3. Rule 26(g)* - An attorney must sign every discovery response. Fed. R. Civ. P. 26(g)(1). The signature certifies that, to the best of the signer's knowledge, formed after a reasonable inquiry, the response is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) **not interposed for any improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1) (emphasis added). When a response violates this certification, the Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both," unless the signer provides a "substantial justification." Fed. R. Civ. P. 26(g)(3).

*4. 28 U.S.C. § 1927* - This federal statute holds that any attorney who unreasonably multiplies proceedings can be sanctioned with payment of the attorney's fees incurred as a result. 28 U.S.C. § 1927. Conduct is sanctionable when, from an objective standpoint, "[a person] intentionally abuses the judicial process or knowingly disregards the risk that his action will needlessly multiply proceedings." *Red Carpet Studios Div. of Source Advantage, Ltd. V. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). A court need not find "conscious impropriety" to hold that conduct was unreasonable and vexatious. *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). Instead, "when an attorney knows or reasonably should know . . . his or her litigation tactics will needlessly obstruct the litigation . . . a trial court does not err by assessing fees attributable to such actions against the attorney." *Id.*

*5. Inherent Authority* - A district court "may award sanctions pursuant to

its inherent powers when bad faith occurs." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (citation omitted). This power allows a court to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Such sanctions include dismissal and assessment of attorney's fees, and may be invoked even if other rules "sanction the same conduct."*Id.* at 45, 49 (citation omitted).

Inherent authority sanctions come from the Court's "power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Id.* at 512. When a party is dishonest in discovery, such as giving false interrogatory answers, sanctions are warranted under a court's inherent authority. *See Ndoye v. Major Performance LLC,* No. 1:15-CV-380, 2017 WL 822110, at *10 (S.D. Ohio Mar. 1, 2017) (Exhibit 6, *Ndoye*) (collecting cases); *Da-Silva v. Smith's Food & Drug Centers, Inc.*, No. 2:12-CV-00595-GMN, 2013 WL 2558302, at *2 (D. Nev. June 8, 2013) (Exhibit 7, *Da-Silva*); *Hino Motors Mfg. USA, Inc. v. Hetman*, No. CV 20-10031, 2021 WL 6285280 (E.D. Mich. Dec. 14, 2021), *report and recommendation adopted sub nom. Hino Motors Mfg. USA, Inc. v. Boyer Consulting, LLC*, No. 20-10031, 2022 WL 54540 (E.D. Mich. Jan. 5, 2022) (Exhibit 8, *Hino*).

### B.    Plaintiff's Refusal to Admit the Charger is Gray is Sanctionable

*1. Offending Conduct & Discovery Efforts* - Plaintiff alleges, in part, that he was wrongfully prosecuted based on a misidentification of the Charger mentioned

6

by the security guards. The guards stated that "they saw Plaintiff and Mr. Lawson driving a gray Dodge Charger around the block several times." [PageID.4] Plaintiff alleges that he co-owned a Dodge Charger with Lopez, but it was green and Lopez told Det. Foster the same, such that she should have known he was not a viable suspect. [PageID.6] Thus, the color of the 2009 Dodge Charger Plaintiff co-owned with Lopez is a material fact in this case.

Based on these allegations, Defendants investigated the Bruner/Lopez 2009 Charger. Defendants obtained the build sheet for the exact vehicle based on VIN number, and brochure for the model year, from the manufacturer. (Exhibit 9, Build Sheet; Exhibit 10, Chrysler Brochure) The brochure confirms that Dodge did not manufacture the 2009 Charger in green. (Exhibit 10, Chrysler Brochure) The build sheet for Plaintiff's Charger says it was "Dark Titanium Met. Clear Coat." (Exhibit 9, Build Sheet; Exhibit 10, Chrysler Brochure)

Defendants obtained photographs of the Charger in front of Lopez's home and confirmed it was the Bruner/Lopez vehicle by its license plate and then at Lopez's deposition. (Exhibit 4, Charger Photographs; Exhibit 11, Lopez Transcript, p. 70) Defendants also obtained a traffic ticket issued to Lopez in 2020. The ticket notes that she was driving a gray Charger with the same license plate. (Exhibit 12, Ticket; Exhibit 13, Trial Transcript, 2020-02-26, p. 11; Exhibit 11, Lopez Transcript, p. 78)

Defendants deposed individuals about the color of the car. Lopez testified that

she still has the car, it has never been painted, and confirmed it is the one in the photographs obtained by Defendants. (Exhibit 11, Lopez Transcript, pp. 68, 70) She falsely testified that it is green, despite having no visual impairments and correctly identifying other objects by color. (Exhibit 11, Lopez Transcript, pp. 70-71) Defendants also deposed Plaintiff and his mother over two days in July, both represented by attorney John Martin of the Mueller law firm. (Exhibit 14, Vass Transcript, pp. 1-2; Exhibit 15, Bruner Transcript, pp. 1-2) Vass testified the car is green. (Exhibit 14, Vass Transcript, p. 116) Mr. Martin, surprised by her answer, told her to "Look and make sure," but allowed her to persist with false testimony. Plaintiff also testified he had no visual impairments, was able to distinguish between gray and green, and falsely testified the Charger is "a green" color, specifically "dirty green."[3] (Exhibit 15, Bruner Transcript, pp. 5, 92-97, 102-103) He said the car looked brown and green, not gray, in the photographs. (Exhibit 15, Bruner Transcript, pp. 104-105).

In disbelief, Defendants then sent Plaintiff a request for admission. It stated, "Please admit that the vehicle depicted in the photographs attached as Exhibit 1 is

---

[3] In another telling interjection, Mr. Martin only objected to his client's use of colored markers *after* Plaintiff testified the Charger was green. He did not object to Plaintiff's initial use of the markers when Plaintiff demonstrated his ability to easily differentiate between colors, including gray and green. Thus, Martin recognized that his client had testified falsely and objected to prevent Defendants from developing further evidence of Plaintiff's false testimony, i.e., ability to correctly identify colors. (Compare Exhibit 15, Bruner Transcript, pp. 92-97 with pp. 106-109)

gray in color." (Exhibit 16, Request for Admission) A physical copy of the request with the attached printed photographs was mailed to avoid distorting the color. Plaintiff responded, without qualification or objection, "Denied." (Exhibit 17, Denial of RTA)

   *2. Consequences* - The denial is untruthful and there must be consequences for Plaintiff's lies to deter him and other litigants from abusing the legal process. This is not a case of subjective opinions that a jury can assess as to the severity of the disagreement; this is an outright lie. The Charger is gray and the attached evidence, discussed above, supports only that conclusion. Bruner was aided in his fraudulent conduct by counsel, at deposition and through the denial that was signed by counsel. This conduct tarnishes the legal process and should be sanctioned under Rules 37(c)(2) and 26(g)(1).

   Plaintiff's denial is also sanctionable under 28 U.S.C. § 1927 and the Court's inherent authority. Defendants described their considerable efforts to demonstrate the falsity of Plaintiff's claim. There is no clearer example of 'unreasonably multiplied proceedings' than the conduct of Plaintiff and his counsel denying this Charger is grey. In addition to the sanction of dismissal, the Court should order Plaintiff's counsel to pay Defendants' attorney fees incurred in making this proof. These sanctions are also available under the Court's inherent authority. Failing dismissal of this case, the Court should instruct the jury of Plaintiff's failure to admit,

bar Plaintiff from presenting any witness that gave or gives false testimony on this issue, order that the request be admitted under Rule 36(a)(6), and order Plaintiff and his counsel to pay Defendants' fees and expenses related to proving the color of the vehicle under Rule 37(c)(2).

## II. PLAINTIFF SHOULD ALSO BE SANCTIONED FOR PROVIDING INCORRECT INFORMATION IN HIS INTERROGATORY ANSWERS

Plaintiff provided false responses, directly and by omission, to discovery requests. Again, he was aided by counsel in doing so. This conduct should not be permitted.

### A.   Law - Inaccurate Answers to Interrogatories

The interrogatories and responses at issue are also governed by five provisions of federal law: Federal Rules of Civil Procedure 26(g), 37(c), 37(b), 28 U.S.C. § 1927, and the Court's inherent authority.

*1. Rule 26(g)* - When a party or attorney signs a discovery response, they certify after reasonable inquiry, it is (1) consistent with the federal rules, (2) not imposed for an improper purpose, and (3) reasonable. Fed. R. Civ. P. 26(g)(1)(B). This rules uses an objective standard. *Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695, 703 (E.D. Mich. 1985), *partially rev'd on other grounds, Olga's Kitchen v. Papo*, 815 F.2d 79 (6th Cir. 1987). Sanctions "are not discretionary" if discovery responses violate Rule 26(g). *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 741 (6th Cir. 2002). The Court may fashion a sanction it deems appropriate "on the

signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Such a sanction "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

In *Pope v. Fed. Exp. Corp.*, 138 F.R.D. 675, 680-681 (W.D. Mo. 1990), *aff'd in part, vacated in part on other grounds,* 974 F.2d 982 (8th Cir. 1992), the plaintiff manufactured a document to support her claims and "repeatedly represented" it "to be something which it was not." This included signed interrogatory responses she knew were not true. *Id.* at 679. The defendant asked for sanctions under Rule 26(g). *Id.* at 682. The court held the plaintiff violated Rule 26(g) by certifying discovery responses not made in good faith and interposed for an improper purpose. *Id.* The court recognized the potential impact of allowing the lawsuit to go forward after Plaintiff's fraud, writing that it:

> would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Id.* at 683. Accordingly, the court dismissed plaintiff's case as a sanction. *Id.*

In *Legault v. Zambarano*, 105 F.3d 24, 26 (1st Cir. 1997), a discrimination case, an employer engaged in a "sham" to mislead as to what testing was used to determine hiring rank. The parties spent considerable resources litigating the sham issues. *Id.* The sham included untruthful interrogatory responses regarding the

testing. *Id.* at 27. The court found the "false responses constituted a flat violation of Fed R. Civ. P. 26(g)(2)." *Id.* at 27. On appeal, the First Circuit found the untruthful responses "failed all three tests" in Rule 26(g)(2). *Id.* Whether through "deliberate intent, or gross negligence" by not properly inquiring into the facts, the responses violated the rules and were interposed for improper purpose. *Id.* Thus, sanctions were appropriate. *Id.; see also Perkins v. Gen. Motors Corp.,* 129 F.R.D. 655, 662 (W.D. Mo. 1990), aff'd, 965 F.2d 597 (8th Cir. 1992).

   2. *Rule 37(c)* - Rule 26(e)(1) imposes a simple burden on parties who have made disclosures or discovery responses: supplement timely when you learn that something is "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). And Rule 37(c)(1) bars the use of information or witnesses "to supply evidence on a motion, at a hearing, or at a trial," if they should have been supplemented under Rule 26(e)(1).

   3. *Rule 37(b)* - When a party does not obey a discovery order, the Court may enter orders to rectify the violation. Fed. R. Civ. P. 37(b)(2)(A). A violation of Rule 37(b) occurs "simply by failing to comply with an order." *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 208 (1958). Reasons for the failure are irrelevant to whether Rule 37(b) was violated. *Id.* Orders the Court may enter for violating Rule 37(b) include dismissing an action. Fed. R. Civ. P. 37(b)(2)(A)(v). "Giving perjurious answers . . . in interrogatory responses will support a Rule 37 sanction of dismissal with prejudice." *Dotson v. Bravo*, 202

F.R.D. 559, 570 (N.D. Ill. 2001), *aff'd*, 321 F.3d 663 (7th Cir. 2003). The Court also must order the disobedient party, their attorney, or both to pay the reasonable expenses caused by the failure – including attorney's fees. Fed. R. Civ. P. 37(b)(2)(C).

       *4. Other Applicable Authority* - Section 1927 and the Court's inherent authority provide grounds for sanctions, as addressed above, for these responses.

**B.**    **Application - Plaintiff's interrogatory responses were false, intentionally deceptive, and omitted key information that was available to Plaintiff if a proper inquiry had been conducted.**

       *1. Offending Conduct* - Defendant served discovery requests on May 27, 2022. (Exhibit 18, Discovery Requests) After the threat of a motion to compel, Plaintiff agreed to a stipulated order requiring "complete responses" by December 23, 2022. [PageID.111] Plaintiff's counsel tried to meet this deadline, serving unsigned responses on the stipulated deadline. (Exhibit 19, Interrogatory Responses). Seventeen days later, on January 9, 2023, Plaintiff served a signed version of the responses from the 23rd, attesting to their accuracy. (Exhibit 20, Signature Page) On the same day (January 9th), Plaintiff also served a supplemental response, changing some of the responses he had just attested to in the 23rd's version. (Exhibit 21, Supplemental Responses (changes highlighted)) After additional prodding by defense counsel about deficiencies, Plaintiff sent a second supplement on March 13, 2023. (Exhibit 22, Deficiency Letter; Exhibit 23, 2nd Supp. Interrogatory Responses).

Plaintiff's later deposition confirmed what Defendants suspected: these answers contain serious misrepresentations. Plaintiff first testified that he read and reviewed the Second Supplement before signing it. (Exhibit 15, Bruner Transcript, pp. 134-135) But after being asked about specific responses and finding errors, Plaintiff backtracked and stated "I don't think I read over this before I signed it." (Exhibit 15, Bruner Transcript, p. 138) The signed versions reflect that he did, indeed, review them, contrary to his second statement. The January signed and supplemental versions were sent the same day, indicating that changes had to be made once Plaintiff actually reviewed them when signing. (Compare Exhibit 19, Interrogatory Response; with Exhibit 21, Supplemental Responses).

Still, relevant information, that should have been known to him and his counsel after reasonable inquiry, was not in the responses. Normally this may appear as just fertile ground for impeachment, but in the larger picture of this case, it is part of a pattern of discovery misconduct. Below Defendants address four of Plaintiff's improper responses.[4]

      i.       _Nos. 8 & 9 – Damages Falsehoods._ Responses Nos. 8 and 9

---

[4] Plaintiff also acknowledged omitting social media profiles. (Exhibit 15, Bruner Transcript, pp. 140-141) He has a new Facebook account and Twitter account. (Exhibit 15, Bruner Transcript, pp. 140-141) The discovery requests required Plaintiff to provide the name and a full download of each account. (Exhibit 18, Discovery Requests) To date, these materials have not been provided.

contained false statements. These asked about Plaintiff's damages. Plaintiff had alleged that he sustained "[s]evere emotional distress" and "[p]hysical manifestations of emotional distress." [PageID.13] In his interrogatory responses, Plaintiff identified social worker Trische Duckworth as a mental health provider that he treated with and will treat with in the future. Plaintiff stated, **"I speak to her via telephone from when I was released to present. I see her for mental health, PTSD, anxiety, and sleep issues"** and indicated that he will receive **"PTSD, anxiety, and sleep issue treatment from Social Worker Trische Duckworth. Treatment is ongoing."** (Exhibit 23, 2nd Supp. Interrogatory Responses)

Defendants tried to obtain Duckworth's records and learned, after much work, that Plaintiff had been dishonest.[5] (Exhibit 24, Subpoenas to Duckworth) Duckworth signed an affidavit stating that she does not treat Bruner, never has, and has only spoken to him once via telephone. (Exhibit 25, Duckworth Affidavit) Plaintiff testified, "I guess I just didn't read over as good as I thought I did." (Exhibit 15, Bruner Transcript, p. 141) His response is not acceptable when Defendants have been led to believe that he has been diagnosed with and treated for certain serious medical conditions that he seeks compensation for in this suit.

---

[5] Obtaining contact with Duckworth was difficult. She refused to accept service, and considerable effort went into serving her, speaking with her, and obtaining her affidavit. Attached is an affidavit intended to be used in a motion to show cause her, drafted before she cooperated. (Exhibit 42, Tucker Affidavit)

ii.     *No. 2 – Work History & Ties to Important Witnesses Withheld.*

The omission in Interrogatory No. 2 is also troubling in that it conceals Plaintiff's ties to key witness Wesley Webb, i.e., the informant that Plaintiff now bases part of his allegations on. The interrogatory asked about employment information for the 10 years before Plaintiff was incarcerated. (Exhibit 18, Discovery Requests) The response only ever told of Plaintiff's self-employment activities. (Exhibit 23, 2nd Supp. Interrogatory Responses)

Yet, discovery revealed other employment that is suggestive of ties to Webb and Lawson that Plaintiff does not want known. Plaintiff's mother testified that he worked for a medical transportation company before his arrest. (Exhibit 14, Vass Transcript, p. 133) She did not recall the name of the company but said that Plaintiff knows the company's name. (Exhibit 14, Vass Transcript, p. 177) In a 2017 email, Lawson wrote that he "started" the transportation company, and Plaintiff and "Boggie [sic-Boogie]" a.k.a. Webb, worked for him. (Exhibit 26, Lawson J-Pay; Exhibit 15, Bruner Transcript, p. 182) Specifically, after discussing his history with Webb, Lawson wrote:

> boggie turned states against me and box. but he never really said shit about me only box. **he said he didn't know box** that I told him about it. **you do know I started a transportation company and box and boggie both worked for me. so that's the first lie**.

(Exhibit 26, Lawson J-Pay)

Plaintiff's response does not mention this job. He testified that he "forgot,"

16

could supplement the response because "some can be added in," and, after initially not remembering, he was able to recall the name of the company and that it was run by two sisters. (Exhibit 15, Bruner Transcript, pp. 136-137) He then denied ever working with Lawson or Webb. No supplement was served, which would have included the dates of his employment. Given that Lawson has pled the fifth to even knowing Bruner, that Webb is in the wind (PageID.431), and that Plaintiff has repeatedly been less than honest, Defendants cannot verify the accuracy of Plaintiff's responses or investigate further. This omission, and the failure to correct it by supplementing it with the company name, should be sanctioned.

   iii. <u>No. 1 – Complete Criminal Background Withheld</u>. Interrogatory No. 1 asked for information about all other investigations, arrests, indictments, and convictions in Michigan or any other state. (Exhibit 18, Discovery Requests) Plaintiff provided information about two convictions. (Exhibit 23, 2nd Supp. Interrogatory Responses) Defendants believed this was incomplete because when the warrant was issued in the underlying criminal case, Plaintiff was sent to Michigan from a Kentucky jail. Defendants sent subpoenas to confirm this belief and obtained records that Plaintiff was arrested in Kentucky. (Exhibit 27, Kentucky Subpoenas) When asked about this omission, Plaintiff stated, "That was an error. I thought it just said Michigan." (Exhibit 15, Bruner Transcript, p. 136)

   Plaintiff had a duty to disclose this information. Only Defendant could be

prejudiced by his non-disclosure, while Plaintiff would benefit by concealing that he was in jail. If Plaintiff was already supposed to be in jail for another crime at the time he was incarcerated, then he would be entitled to less damages for his incarceration. *See Ayers v. City of Cleveland*, 773 F.3d 161 (6th Cir. 2014) (holding that where "even a fair prosecution and trial" would have resulted in incarceration, the jury would award less damages) This is especially relevant given how Plaintiff has calculated the exact number of days he was "wrongfully" imprisoned, without taking into account that he would have remained incarcerated in Kentucky. [PageID.12].

This information was available to Plaintiff and his counsel if a reasonable inquiry had been conducted, and, based on their other conduct in this case, they are not entitled to the benefit of the doubt. While not nearly as damaging because Defendants were more easily able to uncover it, it is a prime example of Plaintiff's reckless, brazen, and foolish attitude towards the discovery process.

2. *Consequences* - Plaintiff's interrogatory responses are sanctionable for several reasons. Plaintiff's responses violated the order for complete responses on or before December 23, 2022. [PageID.111] Not only were such responses ordered, but the order was stipulated to by counsel, indicating special knowledge on the part of counsel of the importance of compliance. The responses served on the stipulated date were not signed or complete. Seventeen days after the unsigned answers were

18

served, a signature page for the original responses and a supplement with changed answers were served. Thus, the only conclusion is that the December 23rd responses were not complete answers (likely because they had not been reviewed by Plaintiff, hence the missing signature) and violated the order. The Court can sanction Plaintiff under Rule 37(b), including with dismissal, where the failure is part of a larger pattern of discovery abuse.

Moreover, the changes made in the supplemented responses (made on the day Plaintiff actually reviewed them) demonstrate that Plaintiff played an active role in the misconduct. In the January supplement, Plaintiff added specific information about his employment and changed his answer to indicate that his Snapchat account to active, instead of inactive. Only Plaintiff would have known such personal details about his employment and active social media accounts, thus indicating that he did read the interrogatories when he first signed them. This contradicts his deposition testimony that, "I don't think I read over this before I signed it." (Exhibit 15, Bruner Transcript, p. 138)

Plaintiff omitted relevant information regarding his criminal history and ties to witnesses, but he outright lied about his damages. He lied about his diagnosis and treatment, which served to bolster his claim of "severe emotional distress." [PageID.13] It is a lie that Plaintiff's counsels should have known was a lie because their office also tried to subpoena Duckworth's records. After Defendants sent a

19

subpoena to Survivors Speak, Ms. Duckworth's organization, Plaintiff also sent a subpoena requesting similar information. (Exhibit 28, PL Subpoena to Survivors Speak) Defendants' requested a copy of any records received from the subpoena, and were told, "Ms. Duckworth advised that she doesn't have any records." (Exhibit 29, 2023-05-22 Email Chain)

The damages lie was made for an improper purpose and the Court should not tacitly encourage such behavior by allowing the case to proceed. This case should be dismissed. Failing that, the portion of the Complaint seeking compensatory damages for any emotional distress and like injuries should be struck,[6] and Plaintiff should be prohibited from asking the jury for such damages, whilst permitting Defendants to impeach him regarding his conduct. Defendants should also be compensated for their efforts in uncovering these lies.

## III.    THE FAILURE TO PRODUCE RESPONSIVE DUCES TECUM MATERIALS IS PART OF A PATTERN OF DELIBERATE NON-COMPLIANCE

### A.    Law - Notice of Deposition and Subpoena

Rule 30 borrows from other rules to provide a mechanism to require a deponent to bring materials to a deposition. For non-parties, a notice of deposition *duces tecum* should include a listing of the requested documents in the subpoena compelling the witness's attendance or an attachment. Fed. R. Civ. P. 30(b)(2). For

---

[6] Specifically, the relief sought in Paragraphs 63(b),(c), and (d) should be struck, including any other references thereto.

parties, the notice of deposition may be accompanied by a Rule 34 request for production. *Id.* Here, Plaintiff and his mother failed to produce materials at their depositions, first due to Plaintiff's counsel, then due to their own failures.

     1. *Subpoena to Vernell Vass, Plaintiff's Mother* - The Court may hold in contempt a person who fails to obey a subpoena. Fed. R. Civ. P. 45 (g). "Although the subpoena is in a sense the command of an attorney…defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions." Fed. R. Civ. P. 45(a)(2) advisory committee's note (1991 amend.). The Advisory Committee notes from 2013 for Fed. R. Civ. P. 45(g) explain that contempt sanctions "may be applied to a person… who fails entirely to obey a subpoena." Contempt proceedings are "initiated by an order to show cause." *Id*.

Civil contempt proceedings are used to coerce a non-complying party into compliance with a Court order and to compensate the complainant for any losses sustained due to non-compliance. *Electrical Workers Pension Trust Fund v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003). Attorney fees and expenses may be awarded to the successful moving party in contempt proceedings. *TWM Manufacturing Company, Inc v Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).

     2. *Request for Production to Carl Bruner* - Pursuant to Fed. R. Civ. P. 37, a party may move for an order compelling discovery if a party fails to provide disclosures or respond to a discovery request, as Plaintiff has done here. Fed. R. Civ.

P. 37(a)(1). The motion must include a certification that the movant attempted to

obtain the discovery without court action. *Id.*

B. **Application – The Failure to Provide Duces Tecum Materials Properly is Another Example of Obstructive and Reckless Discovery Misconduct**

*1. Offending Conduct* - Defendants served notices of deposition for

Plaintiff and his mother, Vernell Vass, upon Plaintiff's counsel on June 28, 2023.[7]

(Exhibit 30, NODs) The notices contained *duces tecum* requests for various

materials relevant to Plaintiff's allegations. (Exhibit 30, NODs).

Vass testified that she had not seen the notice nor the *duces tecum* request

before her deposition. She testified that she had responsive materials at home.

(Exhibit 14, Vass Transcript, p. 25) Defense counsel was provided five folders at the

deposition though, containing various documents. Defense counsel asked, "Are

these your documents in here, these blue folders?" to which Vass stated, "Some

things might be." (Exhibit 14, Vass Transcript, p. 27) Vass recognized some of the

documents, but not others. (Exhibit 14, Vass Transcript, pp. 147-186) Defense

counsel asked, "What I want to know is why is it being produced to me today?" to

which Ms. Vass stated, "I have no idea." (Exhibit 14, Vass Transcript, p. 154)

Plaintiff's counsel stated, "Our office produced that record today, as well as the other

---

[7] Plaintiff's counsel agreed to accept service for Vass and Vass testified that she was represented by Plaintiff's counsel. (Exhibit 43, Consent to Email Service; Exhibit 44, Agreement to Produce Vass; Exhibit 14, Vass Transcript, p. 11)

records you're looking at … Responding maybe to the subpoena." (Exhibit 14, Vass Transcript, pp. 154-155) Vass possesses additional records that were not turned over nor brought to the deposition. (Exhibit 14, Vass Transcript, p. 27)

The next day, Plaintiff testified that he too had never seen his notice nor *duces tecum* request. (Exhibit 15, Bruner Transcript, p. 9) Counsel agreed to a statement on the record that the folders from Ms. Vass's deposition were also intended to be responsive to Plaintiff's *duces tecum* request. (Exhibit 15, Bruner Transcript, p.10) Plaintiff also testified that he may have other documents responsive to the requests. (Exhibit 15, Bruner Transcript, pp. 159-163)

On July 24, 2023, Defendants sent Plaintiff a letter requesting the missing materials within seven days. The letter also requested concurrence in a motion to compel if Plaintiff did not produce the documents. (Exhibit 31, July 24 Letter) On August 4, 2023, another email was sent to see if the records would be provided without motion practice. (Exhibit 32, August 4 Email) Plaintiff's counsel responded on August 8, 2023, stating that he "expect[ed] to hear from Mr. Bruner and Ms. Vass by the end of this week," further stating, "If I obtain a response sooner, I will let you know." (Exhibit 33, August 8 Email) Nothing ever materialized. Based on the above, Defendants certify that they attempt to obtain the discovery without court action.

2. *Consequences* - The fact that requests were never even shared with each deponent, and the materials never received from them, is another example of

Plaintiff's counsels' reckless approach to discovery. This is demonstrative of an intent not to cooperate. It should not be tolerated. And Plaintiff's and Vernell Vass's failures to locate and provide the requested materials after they were made aware of them, and after their counsel assured Defendants' counsel that the responses would be provided, is another example of Plaintiff's intent to hinder discovery as well.

Again, Plaintiff's and his counsel's pattern of noncompliance with discovery is so egregious that the sanction of dismissal is appropriate. Failing that, under Rules 37(a)(1) and 45(g), Plaintiff should be compelled to provide complete responses to the *duces tecum* requests, Vernell Vass should be held in contempt unless she provides complete responses to the *duces tecum requests*, and Defendants should be permitted sufficient time to determine whether continued questioning is necessary, to be done at Plaintiff's expense. Plaintiff should also be barred from relying on materials in his possession. And, this Court should impose monetary sanctions for the time and effort spent as a result this misconduct.

## IV.   PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR INAPPROPRIATE CONDUCT AT DEPOSITION THAT IS DEMONSTRATIVE OF AN INTENT TO FRUSTRATE DISCOVERY

### A.   Law - Objections during Deposition

Rule 30(c)(2) provides that any deposition objection "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). It further provides that "[a] person may instruct a deponent not to answer only when necessary

to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* Rule 30(d)(2) provides that "the court may impose an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party - on a person who impedes, delays, or frustrates the fair examination of the deponent." "Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond…Directions to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. P. 30(c)(2) advisory committee's note to 1993 amendment.

**B.    Application - Plaintiff's counsel should be sanctioned for inappropriate objections and instructing witnesses not to answer questions.**

At the depositions of Lopez, Vass and Plaintiff, Plaintiff's counsels made numerous inappropriate speaking objections, that coached the witnesses' answers. Plaintiff's counsel even directly instructed Vass and Plaintiff not to answer questions despite the lack of privilege to do so. Some of the more egregious examples of these speaking objections and interjections are addressed below. *See also Footnote 2.*

*1.  Coaching at Lopez's Deposition*

The first example of Plaintiff's counsel improperly interfering to aid a witness in effort to protect his client occurred during Lopez's deposition and is the most mild, but allows one to see how future interjections are attempts at coaching. Lopez was

asked whether Plaintiff *ever* drove the Charger at issue, but Lopez wanted to narrow the timeframe. Defense counsel explained the question was purposefully open-ended, and that she was asking if Plaintiff *ever* drove the vehicle. Mr. Mueller interjected, stating "She asked you to clarify the question," and then sought to undermine defense counsel's questioning by saying, "Don't try to sandbag her. Just ask her a question." A proper and relevant question was posed about a significant piece of evidence (the Charger) and Plaintiff's interaction with that evidence (Lopez's original statement addressed this issue) which contributed to the very basis for probable cause that Plaintiff now contests. This interjection was an improper attempt to deflect the question and response, and to shield the witness (and Plaintiff) from potentially damaging testimony.  (Exhibit 11, Lopez Transcript, pp. 39-41)

Then, when Lopez was questioned about the color of the Charger contained in her written statement, counsel again interjected to a proper question to signal to Lopez. Defense counsel asked Lopez if she recalled that the statement said regarding the Charger, and Lopez testified that, yes, she recalled it. (Exhibit 11, Lopez Transcript, pp. 90-93) When counsel then proceeded to probe her admitted memory of the statement, Mr. Mueller attempted to undermine this damaging line of questioning by accusing defense counsel of "sandbagging" the witness by not showing Lopez the statement. (Exhibit 11, Lopez Transcript, pp. 92-93) The interjections did not end, and derailed the testimony, even though Lopez continued

26

to admit that she remembered the initials on statement and they were hers. (Exhibit 11, Lopez Transcript, pp. 100-102)

> Federal Rule of Evidence 613 is directly on point for this issue, stating:
>
> When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.

Fed. R. Evid. 613(a). The Rule does not require the statement be shown to a witness, least of not when the witness has already acknowledged remembering the content of the statement. Here, not only are the contents of the statement relevant to whether probable cause existed to arrest Plaintiff, but Lopez's credibility and memory are relevant such that the question was appropriate, the deflection and interruption by Mueller was not. (Exhibit 11, Lopez Transcript, 90-93) Mueller's repeated accusations of "sandbagging" were baseless and acted only to alert the witness to not provide damaging testimony.

### 2. *Coaching at Vass' Deposition*

These interjections continued at the depositions of Plaintiff and his mother, Vernell Vass, and, again, started out mildly only to build. Vass was asked about her understanding of the lawsuit and she began incorrectly identifying parties. (Exhibit 14, Vass Transcript, pp. 11-13) This time it was Mr. Martin who acted improperly by halting the deposition and going off the record to discuss the matter with Ms. Vass, presumably to ensure her answers were correct, despite defense counsel specifying

27

that she only wanted Vass' understanding. (Exhibit 14, Vass Transcript, p. 13) Vass is apparently very involved in this lawsuit, and has been represented as Plaintiff's "paralegal." (Exhibit 15, Bruner Transcript, pp. 143-144) The question was proper to understand the allegations being made, and by whom, while the coaching was improper.

Vass was also questioned about Plaintiff's family and Plaintiff's activities with his family to explore the depth and validity of Plaintiff's claims of emotional damages. Mr. Martin interjected, stating, "Counsel, you know, I've sat here patiently for this, but…But I'm telling you that this stuff is irrelevant and I've let it go on but -- come on. Are you going to ask for the kid's favorite color?" (Exhibit 14, Vass Transcript, p. 47-49) The question asked was: "Do you guys [Vass, Plaintiff, and Plaintiff's sister] go on family vacations together?" (Exhibit 14, Vass Transcript, p. 47) This question was about Plaintiff's life before vs. after prison, a matter relevant to his claimed emotional damages that include PTSD, anxiety, and depression.

Then Vass was asked, "Did you ask [Plaintiff] why he didn't leave [Club Pandemonium] with Michael Lawson?" Vass began to answer, "Because --" indicating that she did know, but Mr. Martin coached, "No, listen to the question," which caused Ms. Vass to retreat into stating "No," to the question as well as to the follow-up questions, "Do you know why he didn't?" and "Do you have any idea why he wouldn't have left with Michael Lawson?" (Exhibit 14, Vass Transcript, p. 121)

This questions asked information relevant to Plaintiff's statements that he did not commit the shooting and there was no probable cause to believe he did, information that he very well could have shared with his mother, who he lived with at the time. Yet, Defendants were never able to learn what Vass intended to say because of Martin's interjection.

### 3. Additional Examples of Coaching

Further examples of coaching by Martin can be found in Exhibit 14, Vass's Transcript at: p. 143, wherein she was coached not to expound on her knowledge of Webb's testimony; and Exhibit 15, Plaintiff's transcript at: p. 48, wherein Plaintiff was coached to limit his answers and Martin refused to stop when confronted, p. 107-09 wherein Martin prohibited Plaintiff from marking a map of Club Pandemonium despite previously allowing similar markings (see pp. 92-97), and p. 138-39 wherein Plaintiff was coached to read his responses but not give information on what he saw. In each example the witness was told how to answer.

### 4. Consequences

These interjections "unduly prolonged" and "unfairly frustrated" defense counsel's examinations. The interjections appear tailored toward preventing discovery into relevant matters, i.e., the Charger and witness statements at the core of Plaintiff's allegations. Counsels' conduct at the depositions flies in the face of Rule 30(c)(2) and is yet another example of the impeded discovery in this case.

Nothing less than dismissal can correct the coached testimony and evidence withheld. Monetary sanctions are also appropriate to correct for the time wasted.

## V.   PLAINTIFF SHOULD BE COMPELLED TO PROVIDE COMPLETE INITIAL DISCLOSURES INCLUDING A FULL COMPUTATION OF DAMAGES.

### A.    Law – Initial Disclosures

Rule 26 requires specific disclosures, including witnesses "likely to have discoverable information" and "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(i),(iii). It also requires that the party make available those documents upon which the computation is based. Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must provide a specified computation of each category of damages they seek to recover. *Moss v. Fairborn* City Sch., No. 3:08CV00393, 2010 WL 11538379, at *7 (S.D. Ohio Mar. 5, 2010) (attached as Exhibit 34, *Moss*) (holding that Plaintiff has the duty to provide specific categories and extract amounts from records such that authorizations are insufficient); see also *Richardson v. Rock City Mech. Co., LLC*, No. CV 3-09-0092, 2010 WL 711830, at *1 (M.D. Tenn. Feb. 24, 2010) (statement that noneconomic damages would be in the province of the jury was an insufficient) (attached as Exhibit 35, *Richardson*).

### B.  Facts and Application – Plaintiff has refused to provide complete initial disclosures.

Hindsight is always 20/20 and this case is no different; looking back now, Plaintiff's initial disclosures were the first sign that neither he, nor his counsel, took

their obligations seriously. Plaintiff's initial disclosures did not include a computation of damages as required by Rule 26(a)(1)(A)(iii). (Exhibit 36, Plaintiff's Initial Disclosures) The disclosures insufficiently state only that a computation and authorizations will be provided. (Exhibit 36, Plaintiff's Initial Disclosures). Defendants made several attempts to obtain compliance, to no avail. (Exhibit 37, April Letter; Exhibit 38, June 28 Email; Exhibit 39, June 30 Email; Exhibit 40, July 1 Email; Exhibit 41, July 13 Email Chain). Now, it is clear that neither Plaintiff nor his counsel ever intended to respect the judicial process.

Plaintiff also left a key witness off his initial disclosures, whom Defendants had no other opportunity to learn of. At Plaintiff's deposition, Defendants learned the name of the woman Plaintiff was allegedly with at the time of the shooting, his only alibi witness. Plaintiff testified that he was not present at the club at the time of the shooting because a woman he knew named "Jasmine" had picked him up and he spent the night with her. (Exhibit 15, Bruner Transcript, p. 73) This information is contained nowhere else. Bruner testified that he told at least one of his defense attorneys about "Jasmine" but he never located her. (Exhibit 15, Bruner Transcript, p. 84) Jasmine is the only person who can substantiate any of Plaintiff's claims about the night of the shooting. Instead, Defendants are left scrambling to find her after over a year of discovery. Should the Court allow the case to proceed, Plaintiff should be forbidden from calling her and the jury should be specifically instructed that it

can infer from the fact that Plaintiff did not disclose her as a witness that she would be detrimental to his case consistent with Fed. R. Civ. P. 26 (c)(1).

## VI.   PLAINTIFF SHOULD BE ORDERED TO PAY COSTS ASSOCIATED WITH THE PRESENT MOTION

If a motion to compel discovery is granted, or discovery is provided after the motion is filed, Fed. R. Civ. P. 37(a)(5)(A) says, ". . . the court must, after giving an opportunity to be heard, require the party. . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Here, if the Court grants Defendants' Motion, it should also award reasonable costs and attorneys' fees affiliated with the Motion. Similar awards are common in the Eastern District of Michigan. *See, e.g. Sharper v. Wal-Mart Stores, Inc.*, No. 17-12980, 2018 WL 2016156, *1 (E.D. Mich. May 1, 2018); *J & J Sports Productions, Inc. v. Mannecorp, Inc.*, No. 14-cv-11694, 2016 WL 1594377, *2 (E.D. Mich. Apr. 21, 2016). Defendants made every effort to avoid the involvement of the Court in this matter. The costs for filing this motion should not be borne by Defendants.

## CONCLUSION

Plaintiff and his counsel have engaged in a pattern of misdirection, obfuscation, and dishonesty spanning every part of the discovery process. The Federal Rules of Civil Procedure and 28 U.S.C. § 1927, as well as the Court's inherent authority, empower and obligate this Court to put a stop to their games by

dismissing this lawsuit. Defendants respectfully request that this Court enter an order dismissing this lawsuit, or, in the alternative, granting the following sanctions:

(1) Defendants' First Request for Admission, relating to the color of Plaintiff's vehicle, be deemed admitted;

(2) The portions of Plaintiff's Complaint which relate to his claimed emotional damages, and which reference the color of his Dodge Charger, namely paragraphs 28, 36d, 42, 63b-d, and 69a, be stricken;

(3) Plaintiff provide the materials responsive to the *duces tecum* request in his notice of deposition;

(4) Vernell Vass show cause why she should not be held in contempt of court for failing to provide the materials responsive to the *duces tecum* request in, and subpoena for, her deposition;

(5) Defendants be allowed to continue the depositions of Plaintiff and Vernell Vass, if necessary, after the materials responsive to their respective *duces tecum* requests are provided to Defendants;

(6) Should this matter proceed to trial, the jury be instructed as to Plaintiff's refusal and failure to admit the color of his vehicle;

(7) should this matter proceed to trial, Plaintiff be barred from presenting any witness that gave or gives false testimony on this issue;

(8) Plaintiff and his counsel pay monetary sanctions to Defendants for the

undue delay and frustration of his, Terri Lopez's and Vernell Vass's depositions; and

(9) Plaintiff and his counsel pay monetary sanctions to Defendants for the time and effort expended in bringing the lies and omissions in his discovery responses and response to Defendants' first request for admission to light.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/ Kali M. L. Henderson (P76479)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   November 10, 2023          E: khenderson@sewardhenderson.com

## PROOF OF SERVICE

I hereby certify that on **Friday, November 10, 2023**, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification to the following: *All Parties and Attorneys of Record.*

/s/Farah Hammoud
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
T: (248) 733-3580
F: (248) 733-3633
E: fhammoud@sewardhenderson.com

34